MARIE FAULL

*v.*

H. R. ABBOT, *et al.*

(No. 10470)

Submitted September 30, 1952. Decided December 22, 1952.

*Steptoe & Johnson, Stanley C. Morris* and *Thomas W. Steptoe* for plaintiffs in error.

*Jackson, Kelly, Morrison & Moxley, W. T. O'Farrell* and *W. J. Carter* for defendant in error.

BROWNING, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Kanawha County by Marie Faull to recover damages for personal injuries sustained in an automobile accident. The accident occurred July 11, 1950 on U. S. Highway 19 in Nicholas County on a portion of the highway which the defendants, H. R. Abbot and W. S. Abbot, had undertaken to resurface under contract with the State Road Commission, and which contract provides, in part, as follows:

"1.7.6. Public Conveyance and Safety: The Contractor shall conduct the work in such a manner as to provide and insure the safety and convenience of the public and the residents along and adjacent to the highway, and to offer the least obstruction to the flow of traffic. Unless otherwise provided on the Plans, the Contractor shall provide and maintain, in a continually smooth and

passable condition, a traffic lane for one-way traffic. The traffic lane or lanes, or detour, as the case may be, shall be shaped and smoothed by approved methods and machinery as often as required by the Engineer. * * *

"No one-way traffic shall be instituted unless approved by the Engineer; and except by written permission of the Engineer the one-way traffic lane shall not at any time exceed one mile in length. The Contractor shall furnish whatever flagmen and watchmen the Engineer considers necessary to regulate traffic on one-way traffic lanes or around or along hazardous or dangerous places, or around the Contractor's equipment.

"The Contractor shall take necessary care at all times, in all operations and use of his equipment, to protect the traveling public and facilitate traffic. * * *"

Upon the plans of the project, the following designated "Traffic Note" appears:

"The provisions of Section 7 of the Standard Specifications with reference to the maintaining of traffic during construction will be rigidly enforced. The Contractor will be required to arrange his work to offer the least inconvenience to traffic and to construct such portions of his contract as may be necessary for the convenience of traffic at the contract unit prices. A one-way all weather lane over which traffic may pass with the least inconvenience is intended. The State will furnish and pay for the flagman at each end of the project when one-way traffic is considered by the Engineer to be necessary. The Contractor will furnish and pay for any watchman or flagman necessary to conduct traffic around equipment and around points where construction is being carried on. The Contractor will furnish and pay for all equipment and labor necessary to properly maintain the one-way all weather lane. All materials considered necessary by the Engineer for this purpose will be furnished to the Contractor by the State."

The resurfacing project, covering some twelve to thirteen miles, extended from a place called Hughes Bridge, southward to a point one mile south of Nallen, West Vir-

ginia. The defendants started at Hughes Bridge resurfacing the right hand or southbound lane, and on the day previous to the accident had parked their equipment within view of the Hayslett residence, which is connected with the highway by a private, unimproved lane. In the same general vicinity are located a saw mill, garage and three private residences. On the day of the accident, one-way traffic was being maintained over a distance of approximately three miles, beginning at McClung's Store and continuing past the Hayslett residence, one and one-half to two miles, with a flagman stationed at each end.

The plaintiff was a passenger in her husband's automobile proceeding south towards Nallen. At McClung's Store, they were detained by the flagman until the flag came through, whereupon they were permitted to proceed, the only action of the flagman, according to their testimony, being to wave them to the left side of the road. At this time, there were two trucks immediately preceding them in the line of traffic. Shortly after leaving the flag station, the plaintiff's husband increased his speed to approximately thirty miles per hour, passed the two trucks and was rounding a very sharp curve when he collided head-on with an oncoming vehicle driven by one Hayslett, in which collision the plaintiff sustained a very serious injury to her leg.

The Hayslett automobile was owned by one Marvel Hayslett, who, with his sister Melba, both of whom were employed in Nallen, had, a short time previous to the accident, returned home from work passing the flagman at the southern terminus of the one-way traffic zone. Upon their return home, it became necessary to go to a store, and Melba, in the company of Marshall Hayslett, the driver of the car and then about seventeen years old, and two younger brothers, left their residence by way of the private lane, and, entering upon the highway, proceeded northward to the point of the accident.

At the conclusion of plaintiff's evidence, the defendants moved to strike the plaintiff's evidence and direct a ver-

dict for the defendants, which motion was overruled by the court.

In behalf of the defendants, testimony was adduced to the effect that at both ends of the project, standard warning signs were placed informing the public of the fifteen mile speed limit; that the road was under construction and cautioning them to drive carefully. The flagman stationed at McClung's Store testified that he informed each driver that the speed limit was fifteen miles an hour, to keep to the left, to refrain from passing, and that he had so warned Mr. Faull. The Faulls denied that they had been so informed. Several employees of the State Road Commission testified that the flagmen were stationed each day by the engineer or supervisor at each end of the traffic zone, and at intersecting public highways, but that no flagmen were ever stationed at private roads or drives entering upon the highway.

At the conclusion of all of the evidence, the defendants again moved that a verdict be directed in their favor, which motion was overruled by the court.

The jury returned a verdict in favor of the plaintiff for the sum of $9,000.00, whereupon the defendants moved for judgment notwithstanding the verdict, and, in the alternative, to set aside the verdict and award a new trial, both of which motions were overruled.

The primary question before this Court in this case is whether there is evidence in the record sufficient to support the verdict of the jury for the plaintiff. In the absence of prejudicial error this Court will not disturb the verdict of a jury in an action at law unless it is without sufficient evidence to support it or plainly against the decided weight and preponderance of the evidence. This is especially true where the verdict of a jury has been approved by the trial court. These principles of our law are so fundamental that it is not necessary to cite any authority in support of them.

It is well settled that a plaintiff cannot recover damages of a defendant for injuries sustained unless it appears that

there existed, at the time and place, a duty on the part of the defendant, and a corresponding right in the plaintiff for the protection of the latter. "Liability of a person for injury to another cannot be predicated on negligence unless there has been on the part of the person sought to be charged some omission or act of commission in breach of duty to the person injured." *Morrison* v. *Roush, et al.*, 110 W. Va. 398, 158 S. E. 514.

It is clearly shown, and there is no contention to the contrary, that the plaintiff was, on the day of her injury, traveling upon a public highway in a motor vehicle being operated by her husband; that they had a right to traverse this highway; and that they were rightfully at the place where the injury occurred. On the other hand, it is equally clear that the defendants had the same legal right to be where they were on the day of this injury, and to engage in the repair or improvement of the highway in that area as they were doing at that time. The rights of the defendants in this regard, however, came only from their contractual relationship with the State of West Virginia, as delegated to them by one of its agencies, the State Road Commission.

The nature of the terrain in the locality where this injury occurred is such that it is not possible to provide a detour for motorists when it becomes necessary to repair that particular section of the highway. It was, therefore, necessary to institute and maintain one-way traffic between various points on the project while the construction work was going on.

It is clear from the contractual arrangements between the State Road Commission and the contractors that the former would be responsible for providing and paying flagmen to be stationed at the beginning and at the end of that section of the highway wherein one-way traffic was being maintained, and at any point where an intersecting highway joined with the road under construction. The contract also specifically required the contractor to furnish and pay for any flagmen necessary to conduct

traffic around equipment and around points where "construction is being carried on." The contract further provides that the contractor shall furnish whatever flagmen and watchmen the engineer considers necessary on one-way traffic, along hazardous or dangerous places or around the contractor's equipment. The providing of flagmen in the latter instance by the contractors is in the discretion of the engineer of the project, and there is no evidence in this record to indicate that the contractors had been required by the engineer to furnish flagmen and watchmen at any points other than places where construction was being carried on and equipment was being used.

Counsel for the litigants in this case are not in agreement upon the meaning of the phrase "where construction is being carried on," the plaintiff urging that it should be construed to mean all of that portion of the highway wherein one-way traffic was being maintained; and the defendants that it meant only the restricted area where the defendants equipment was being employed in pouring the material with which the highway was being covered.

There was no specific provision in the contract with reference to the guarding of private entrances of individuals who lived between the flag stations, at the beginning and end of the construction. There was testimony in the record by officials of the State Road Commission to the effect that they did not attempt to place watchmen or flagmen at each of these private entrances on this project, or any other similar one for the reason that they did not believe it necessary, and they further testified that this practice was not required of the contractor either in this instance or upon any other project.

There can be little doubt that the collision would not have occurred had there been a flagman stationed at the private entrance to the Hayslett dwelling to prevent young Hayslett from entering the highway and proceeding north thereon at a time when the south bound traffic was moving in his direction. It is upon the question whether there existed a duty, contractual or common law, on the part

of the defendants to station a flagman at the entrance to the highway from the Hayslett driveway to prevent the Hayslett automobile from entering thereon, with which we are confronted.

The recent case, (1951), of *Nester* v. *United Foundation Corp., et al.,* 136 W. Va. 336, 67 S. E. 2d 533, involved an action against a contractor for injuries resulting from the alleged failure of the contractor to maintain a temporary way or detour around an obstruction in a street in Ridgeley, West Virginia. The syllabus in that case says: "No duty exists on the part of a contractor to provide or maintain a temporary way or detour around an obstruction of a street within a municipality, resulting from excavation work done by the contractor with permission of the municipality, in the absence of a contract or special circumstances." In the body of the opinion in that case it is stated that: "In many circumstances the costs of providing such a way or detour would be prohibitive, preventing or delaying needed repairs or improvements of the streets. In practically every case the cost of such repairs or improvements would be increased, at public expense. In such circumstances public necessity requires that no such duty be invariably imposed upon the contractor. Individual inconvenience of the traveler must give way to public convenience and necessity."

It is clear from the case under consideration that the State Road Commission undertook to direct traffic over that part of the highway which was under construction, and where one-way traffic was being maintained. Its employees were stationed at each end of the one-way traffic area, and at points where intersecting highways entered the highway being repaired. It is also apparent from the evidence, and from general knowledge, that the contractor was at all times under the supervision and direction of the engineer of the State Road Commission, who was assigned to this project. All that the contractor did was subject to approval of the engineer, and all that he refrained from doing must have that official's assent. It is our interpretation of the contract that the pharse "to con-

duct traffic around equipment and around points where construction is being carried on" was all that was required of the contractor, and had reference only to that part of the highway where material was being poured, equipment was being used, and to the immediate vicinity of each of these points.

The entrance to the Hayslett residence was two miles to the north of the place where any equipment of the contractor was placed or any work was being done at the moment. The collision occurred an additional one mile away from where "construction was being carried on." If, under a contract to construct or repair a highway of this State, or a holding of this Court so interpreting such an agreement, the contractors were required to station a guard or watchman at every private entrance along the highway where one-way traffic was being maintained, and at all other points where it would be possible for a vehicle to enter such portion of the highway, the cost of highway improvement would be materially increased at public expense. On the other hand, if the State Road Commission should undertake to so minutely police such portions of a highway under construction, it would necessitate the employment of thousands of additional persons at a staggering cost to the taxpayers.

It is the opinion of this Court that no breach of a duty owing to the plaintiff by the defendants, either statutory, contractual or common law, is shown by this record. Hence, there exists no primary negligence on the part of the defendants.

The questions of contributory negligence and proximate cause, among others, were raised by counsel for defendants as grounds for reversal, however, in view of the holding of the Court that there was no primary negligence on the part of the defendants, it will be unnecessary to discuss these other assignments of error in this opinion.

The judgment of the Circuit Court of Kanawha County

is reversed, the verdict of the jury set aside, and the case remanded to that court for a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*